J-S78042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FREDERICK ANDREW POSTIE, | : | |
| | : | |
| Appellant | : | No. 17 MDA 2014 |

Appeal from the Judgment of Sentence entered on December 6, 2013
in the Court of Common Pleas of Schuylkill County,
Criminal Division, No. CP-54-CR-0001119-2012

BEFORE: GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:               **FILED JANUARY 26, 2015**

Frederick Andrew Postie ("Postie"), *pro se*, appeals from the judgment of sentence imposed after a jury convicted him of four counts each of burglary, criminal trespass, theft by unlawful taking, and receiving stolen property, as well as two counts of criminal conspiracy.[1, 2] We affirm.

The trial court set forth the procedural history and relevant facts underlying this appeal in its Pa.R.A.P. 1925(a) Opinion, which we incorporate herein by reference. **See** Trial Court Opinion, 3/25/14, at 1-5.

At the close of trial, the jury convicted Postie of the above-mentioned offenses. Following Postie's filing of a Notice of Appeal, and a *pro se* Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the

---

[1] **See** 18 Pa.C.S.A. §§ 3502(a), 3503(a)(1)(ii), 3921(a), 3925(a), 903(a)(1).

[2] Postie currently has an unrelated appeal pending in this Court, at docket number 2442 EDA 2014, concerning his separate criminal case in the Carbon County Court of Common Pleas.

trial court filed its Pa.R.A.P. 1925(a) Opinion.  In response, Postie filed a *pro se* Application for relief with this Court, requesting that we grant him permission to file an Amended Rule 1925(b) Concise Statement with the trial court.  This Court granted Postie's Application, after which Postie filed a *pro se* Amended Rule 1925(b) Concise Statement, and the trial court filed an Amended Rule 1925(a) Opinion.

On appeal, Postie presents the following issues for our review:

1) Did the trial court err when it denied suppression of statements made by [Postie to police,] and [inculpatory evidence seized from Postie's] cell phone[,] where police, lacking probable cause and acting outside of their territorial jurisdiction, seized [Postie] and subjected him to a custodial interrogation, coercing his statement[s] by confronting him with illegally seized items?

2) Did the trial court err and deny [Postie] due process by not conducting a hearing to address [Postie's] Petition to proceed in a self-representative role?

3) Did the trial court err when it denied [Postie's] Motion to dismiss the conspiracy charges pursuant to section 110 of the Pennsylvania Crimes Code?

4) Did the trial court err by sentencing [Postie] for multiple conspiracy charges, burglary[,] and the act in which the burglarious entry resulted in[, graded] as felony 1's[,] where the facts only supported felony 2's, and by improperly failing to credit [Postie] for time spent in custody prior to trial?

5) Did the trial court abuse it's [*sic*] discretion by relying on a deficient pre-sentence report during sentencing and then failing to state its reason[s] [for the sentence imposed] on the record?

6) Was [Postie] denied due process when the prosecuting authorities failed to provide a video of the custodial interrogation?

Brief for Appellant at 4 (some capitalization omitted).[3]

First, Postie argues that the suppression court erred in failing to suppress (1) his inculpatory written and oral statements made to police officers (hereinafter "the interviewing officers") during the interview conducted at the Summit Hill Police Department on February 28, 2012; and (2) inculpatory evidence seized from his cell phone. **See id.** at 13-35. Postie points out that the suppression court ruled that evidence, found by police when executing a search warrant of Postie's residence a few days before the February 28, 2012 interview, was inadmissible because the items seized were not specifically identified in the search warrant. **See id.** at 30-32; **see also** Suppression Court Opinion, 5/30/13, at 5 (stating that "[t]he application for the warrant simply stated that [the police] were searching for 'stolen items from several burglaries in Rush Township.' … Pa.R.Crim.P[]. 215 does require that the applicant specifically identify the property to be searched and seized, and appellate court decisions have consistently held that a warrant can be held to be unlawful if this requirement is not met." (citations to case law omitted)). Postie contends that the suppression court should have suppressed his inculpatory statements, made to the interviewing officers, because the interviewing officers coerced such

---

[3] We observe that Postie's Argument section is voluminous. **See** Brief for Appellant at 13-63. Moreover, Postie concedes that his brief slightly exceeds the word limit contained in Pa.R.A.P. 2135. **See** Brief for Appellant at 64; **see also** Pa.R.A.P. 2135(a)(1) (providing that a principal brief shall not exceed 14,000 words). However, we will overlook this minor defect.

statements by confronting Postie with the illegally seized evidence from his residence. *See* Brief for Appellant at 30-35. Moreover, according to Postie, the suppression court erred in failing to rule that (a) the interviewing officers lacked probable cause to conduct a valid custodial interrogation; and (b) the warrant to seize Postie's cell phone was not supported by probable cause. *See id.* at 13, 16-18, 28-30.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted).

Initially, we observe that the evidence seized from Postie's cell phone pursuant to a warrant was not used at trial. Accordingly, this issue is moot.

Regarding the admissibility of Postie's inculpatory statements to the interviewing officers, the suppression court set forth the applicable law, thoroughly addressed Postie's challenge concerning this evidence, and determined that the court properly refused to suppress Postie's statements. *See* Suppression Court Opinion, 5/30/13, at 6-14. Because our review confirms that the suppression court's thorough and cogent analysis is

- 4 -

supported by the record and the law, we affirm on this basis with regard to Postie's first issue. *See id.*[4]

Next, Postie argues that the trial court erred by depriving him of his constitutional right to proceed *pro se* at trial. *See* Brief for Appellant at 36-43. Postie points out that, prior to trial, he sent the trial court judge a *pro se* Petition invoking his right to represent himself (hereinafter "the Petition for self-representation").[5] *Id.* at 37. Although Postie concedes that he subsequently expressed that he wanted defense counsel to represent him at trial, according to Postie, defense counsel "coerce[d] Postie into acquiescing to his will." *Id.*; *see also id.* at 41-42. Postie further argues that the trial court erred in failing to conduct a hearing on the Petition for self-representation. *Id.* at 39-41.

The trial court addressed Postie's claim concerning the Petition for self-representation in its Pa.R.A.P. 1925(a) Opinion, and properly rejected it, reasoning that it is "disingenuous" based upon Postie's subsequent expression that he wanted to be represented by defense counsel at trial. *See* Trial Court Opinion, 3/25/14, at 9. The trial court's rationale is

---

[4] As an addendum, to the extent that Postie challenges the jurisdiction of the interviewing officers, he correctly observes in his brief that "[a]rgument [regarding this matter] was not forwarded by [Postie's] trial counsel as to the Municipial Police Jurisdiction Act[, 42 Pa.C.S.A. § 8951 *et seq.*,] violation and[,] thus, [this claim is] waived for purposes of this appeal." Brief for Appellant at 13; *see also* Pa.R.A.P. 302(a) (providing that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[5] Postie was represented by defense counsel when he filed the Petition for self-representation.

- 5 -

supported by the record, and we therefore affirm on this basis with regard to this claim. **See id.** Moreover, we find no merit to Postie's bald allegation that defense counsel coerced Postie into being represented by counsel at trial, nor do we discern any error or abuse of discretion by the trial court in not conducting a full hearing on the Petition for self-representation.

In his third issue, Postie argues that the trial court erred when it denied defense counsel's oral Motion to dismiss the conspiracy charges pursuant to the compulsory joinder rule, codified at 18 Pa.C.S.A. § 110.[6] **See** Brief for Appellant at 44-45. Specifically, Postie contends that section 110 mandated dismissal of these charges because (1) he was previously convicted of conspiracy in Northampton County; and (2) these conspiracies were a part of the same criminal episode, and occurred during the same

---

[6] Section 110 provides, in relevant part, as follows:

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1) The former prosecution resulted … in a conviction … and the subsequent prosecution is for:

* * *

(ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and *occurred within the same judicial district as the former prosecution* unless the court ordered a separate trial of the charge of such offense[.]

18 Pa.C.S.A. § 110(1)(ii) (emphasis added).

timeframe. *See* Brief for Appellant at 44 (arguing that "[t]he Northampton [C]ounty charge allegedly took place on January 1, 2012, while the Schuylkill [C]ounty charges allegedly occurred between the dates of December 12, 2011[,] and January 13, 2012. Hence, it would be illogical to assume these were separate conspiracies.").

As noted above, the compulsory joinder rule only bars a subsequent prosecution if all charges were *within the same judicial district* as the former prosecution. *See* 18 Pa.C.S.A. § 110(1)(ii); *see also Commonwealth v. Miskovitch*, 64 A.3d 672, 686 (Pa. Super. 2013). The compulsory joinder rule is inapplicable in the instant case because Northampton and Schuylkill Counties are different judicial districts. Therefore, this claim does not entitle Postie to relief.

Postie's fourth issue is actually comprised of several distinct sub-issues, which we will address separately. First, Postie argues that the sentencing court erred in failing to credit him for 59 days that he had served in jail (hereinafter "the disputed time") while awaiting sentence on the instant charges. *See* Brief for Appellant at 46. According to Postie, the disputed time was not credited to any of his other sentences imposed in other counties. *Id.* We disagree.

At Postie's sentencing hearing, after considering argument from both parties concerning the disputed time, the sentencing court determined that Postie was not entitled to have the disputed time credited toward the sentence imposed in this case because he had served the disputed time,

outside of Schuylkill County, toward a sentence imposed on another case. *See* N.T., 12/6/14, at 8-9; *see also* Amended Trial Court Opinion, 5/30/14, at 3 (stating that "[Postie] had no credit for the instant case[,] as he had been serving a Carbon County sentence during his period of incarceration."). Accordingly, there is no merit to Postie's claim for credit regarding the disputed time. *See* 42 Pa.C.S.A. § 9760(4) (providing that credit for time served on a sentence can only be granted when it has not already been credited toward another sentence); *see also Commonwealth v. Pardo*, 35 A.3d 1222, 1231 n.14 (Pa. Super. 2011) (applying section 9760(4) and concluding that the appellant was not entitled to credit for time that had already been credited toward a sentence imposed in a different jurisdiction).

Also in his fourth issue, Postie contends that the sentencing court erred in sentencing him for his two burglary convictions, graded as first-degree felonies, because the burglarized buildings in question do not meet the statutory definition of an "occupied structure." *See* Brief for Appellant at 48-51, 52-54. According to Postie, "[t]he facts only support a finding of unoccupied structures in which no individual was present, consistent with a charge of second-degree felonies." *Id.* at 54.[7]

At the time that Postie was charged, the Crimes Code defined the

---

[7] We observe that Postie does not challenge the sufficiency of the evidence supporting the burglary convictions.

offense of burglary,[8] and set forth the grading of the offense, as follows:

> **(a) Offense defined.**-- A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.
>
> \* \* \*
>
> **(c) Grading.**—
>
>> (1) Except as provided in paragraph (2), burglary is a felony of the first degree.
>>
>> (2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

18 Pa.C.S.A. § 3502(a), (c); **see also** 18 Pa.C.S.A. § 3501 (defining "occupied structure" as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present.").

With this in mind, our review discloses that the trial court addressed this claim in its Pa.R.A.P. 1925(a) Opinion and properly rejected it. **See** Trial Court Opinion, 3/25/14, at 8. We affirm with regard to this claim based on the trial court's rationale. **See id.**

Additionally, Postie challenges the language of section 3502(c), asserting that the phrase "adapted for overnight accommodation" is unconstitutionally ambiguous. **See** Brief for Appellant at 48-53; **see also** 18

---

[8] The burglary statute was amended after the charges were filed against Postie.

Pa.C.S.A. § 3502(c)(2). Postie has waived this challenge, since he did not raise it in his court-ordered Rule 1925(b) Concise Statement. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ny issues not raised in a 1925(b) statement will be deemed waived."); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) (providing that "[i]ssues not included in the [Concise] Statement … are waived."). Likewise, Postie has waived his challenge to the trial judge's jury instruction concerning the burglary statute and the phrase "occupied structure," ***see*** Brief for Appellant at 53-54, since he did not raise this challenge in his Concise Statement. ***See Lord, supra***.

Postie next contends that the sentencing court erred in imposing separate sentences on his two convictions of conspiracy to commit burglary: one, a first-degree felony for the burglary of 714 Claremont Avenue; and the other, a second-degree felony for the burglary of 716 Claremont Avenue. ***See*** Brief for Appellant at 44-45 (arguing that "[s]ince it would be illogical to assume [that] these two separate conspiracies to burglarize both buildings occurred at separate times[,] when the crimes themselves happened simultaneously, they should be viewed as a single conspiracy to burglarize both buildings."). We disagree. The trial court properly sentenced Postie on

both of his conspiracy convictions,[9, 10] since the convictions concerned two separate conspiracies, and burglaries of two different properties, which occurred at different times. ***See, e.g., Commonwealth v. Andrews***, 768 A.2d 309, 316 (Pa. 2001) (holding that the appellant was properly convicted of, and sentenced on, two separate counts of conspiracy to commit robbery where "the crimes involved different victims, were carried out at different apartment buildings, in different parts of the city, and were separated by three hours. In addition, the crimes were not interdependent, as where one offense is a 'necessary intermediate step' to committing a later offense." (citation omitted)).

Finally, Postie argues that the sentencing court erred in failing to merge his sentences for burglary with his sentences for criminal trespass, since criminal trespass was the object of the burglaries. ***See*** Brief for Appellant at 47-48;[11] ***see also*** 18 Pa.C.S.A. § 3502(d) (providing that "[a]

---

[9] Postie does not raise a challenge to the sufficiency of the evidence supporting his separate conspiracy convictions. ***See*** Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); ***see also Lord, supra***.

[10] We additionally observe that the sentencing court ordered the sentence imposed on Postie's second count of conspiracy to run concurrently with the sentence imposed on the first count.

[11] Postie has failed to develop this claim in any meaningful fashion. ***See Commonwealth v. Einhorn***, 911 A.2d 960, 970 (Pa. Super. 2006) (stating that "[t]his Court will not become the counsel for an appellant, and will not, therefore, consider issues which are not fully developed in the brief. … An issue that is not properly briefed … is considered waived …." (citations omitted)). Nevertheless, we decline to deem this claim waived because the trial court concisely addressed it in its Pa.R.A.P. 1925(a) Opinion.

person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.").

The trial court concisely addressed this claim in its Pa.R.A.P. 1925(a) Opinion and properly rejected it. *See* Trial Court Opinion, 3/25/14, at 8. We affirm with regard to this claim based on the trial court's rationale. *See* *id.*

In his fifth issue, Postie argues that the sentencing court committed reversible error by relying upon a "deficient" pre-sentence investigation report (hereinafter "PSI"), which was prepared without his having been interviewed,[12] and did not contain mitigating information concerning his background. *See* Brief for Appellant at 55-59. Specifically, Postie contends that the sentencing court failed to consider the following mitigating factors:

> [Postie] is not a career criminal[;] Postie's prior record score is a one; he holds a Master Certification in automobile repair from the Automotive Service Excellence Group; at the time of his incarceration[,] he owned and operated his own small business …; he is married and supported a family for more than 18 years; he was currently completing his degree in Psychology[; and Postie] is an avid volunteer in his community[.]

*Id.* at 56. Postie additionally asserts that the sentencing court abused its discretion by failing to adequately state its reasons for the sentence imposed on the record. *Id.* at 55, 58.

---

[12] The record confirms Postie's assertion that he was not interviewed before the PSI was filed. *See* N.T. (sentencing), 12/6/14, at 21.

- 12 -

Postie's claim essentially raises a challenge to the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where the appellant has preserved the discretionary sentencing claim for appellate review by raising it at sentencing or in a timely post-sentence motion, the appellant must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Here, Postie included a Rule 2119(f) concise statement in his brief. However, he has waived his claim that the sentencing court failed to set forth adequate reasons on the record for the sentence imposed because he failed to preserve it either at sentencing or in a post-sentence motion. *See Commonwealth v. Gibbs*, 981 A.2d 274, 282-83 (Pa. Super. 2009) (stating that "[i]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").

Concerning Postie's allegation that the sentencing court erred by relying upon a "deficient" PSI,[13] and failing to consider certain mitigating factors, such a claim does not necessarily raise a substantial question. *See*

---

[13] Postie preserved this claim by raising it at sentencing.

***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (noting that a claim that the sentencing court failed to consider certain mitigating factors generally does not raise a substantial question); ***see also Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988) (stating that, where the sentencing court had the benefit of a PSI, an appellate court can "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."). However, in the instant case, we deem that Postie's claim presents a substantial question, given that he was not interviewed prior to preparation of the PSI to provide mitigating information. ***See, e.g., Commonwealth v. Carrillo-Diaz***, 64 A.3d 722, 724-25 (Pa. Super. 2013) (holding that an appellant's claim that the sentencing court abused its discretion by imposing sentence without ordering a PSI, or failing to give a reason on the record for not ordering a PSI, presents a substantial question).

Accordingly, we will address the merits of Postie's claim, mindful of our standard of review: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Bricker***, 41 A.3d 872, 875 (Pa. Super. 2012) (citation omitted).

A review of the transcript from Postie's sentencing hearing reveals that Postie's defense counsel, in fact, brought many of the above-mentioned mitigating factors to the attention of the sentencing judge. ***See*** N.T.,

12/6/14, at 5-6, 8-12, 25-26. Moreover, both Postie and his wife testified at the sentencing hearing and presented mitigating information. *See id.* at 15-25. Additionally, Postie stated his opinion to the sentencing judge that the PSI "was a completely negative report done without my knowledge[,]" *id.* at 20, and, in response, the judge gave Postie an opportunity to offer any mitigating information and/or contest anything in the PSI that he considered erroneous. *See id.* at 20-25. In the trial court's Amended Rule 1925(a) Opinion, the court stated that "[t]he [sentencing] court considered all of the material produced at the sentencing hearing prior to promulgating the sentence that it did. None of the discrepancies [that Postie] identified in the [PSI] played any part in his sentence." Amended Trial Court Opinion, 5/30/14, at 2. Accordingly, we discern no abuse of discretion by the court in sentencing Postie.

Finally, Postie argues that his due process rights were violated because the Commonwealth failed to provide him with a copy of the video recording of his confession to the interviewing officers. *See* Brief for Appellant at 60-61;[14] *see also* Trial Court Order, 5/30/13 (ordering the Commonwealth to provide to Postie a copy of any recording of the police interview of Postie conducted on February 28, 2012, *if such recording existed*).

---

[14] Postie concedes, however, that "this [C]ourt [has] determined that 'the Pennsylvania Constitution does not require contemporaneous recording of statements and that the adoption of a rule requiring contemporaneous recording of custodial interrogation should be left to the Pennsylvania Supreme Court or the General Assembly[.]'" Brief for Appellant at 61 (quoting *Commonwealth v. Harrell*, 65 A.3d 420, 429 (Pa. Super. 2013)).

The trial court addressed this claim in its Amended Rule 1925(a) Opinion as follows: "[N]o such video tape was entered into evidence at trial, and no such video tape exists because the machinery used to attempt to produce such a video malfunctioned. It was not possible to produce something that did not exist." Amended Trial Court Opinion, 5/30/14, at 3-4; *see also* Trial Court Opinion, 3/25/14, at 9 (stating that "[t]his matter was addressed at the suppression hearing[,] at which [one of the police officers who interviewed Postie] testified that, although there were signs informing individuals that interview sessions would be recorded, the tape recording system was not functioning properly."). Our review discloses that the trial court's rationale is supported by the record, and we therefore affirm on this basis in determining that Postie's final issue does not entitle him to relief. *See* Amended Trial Court Opinion, 5/30/14, at 3-4; Trial Court Opinion, 3/25/14, at 9.

For the foregoing reasons, we discern no abuse of discretion or error of law by the trial court, and we therefore affirm Postie's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2015

- 16 -

IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY--CRIMINAL

COMMONWEALTH OF PENNSYLVANIA : NO. 1119 – 2012

vs. :

FREDERICK ANDREW POSTIE :

Jennifer Lehman, Esq., Assistant District Attorney – for the Commonwealth
Frederick A. Postie – Defendant – Pro Se

<u>OPINION PURSUANT TO PA.R.A.P. 1925</u>

DOMALAKES, J.

The Defendant has appealed his total sentence of forty (40) months to one hundred thirty-two (132) months, followed by two (2) years probation, imposed on December 6, 2013, after he was convicted by a jury on October 29, 2013, of four (4) counts of Burglary – two (2) counts of which involved an occupied structure; two (2) counts of Criminal Conspiracy; four (4) counts of Criminal Trespass – Breaking into Building; four (4) counts each of Theft by Unlawful Taking and Receiving Stolen Property; all of which involve thefts in excess of $2,000.00; and four (4) counts of Criminal Mischief – Causing Damage to Tangible Property which was intentional. The jury determined that the damage done to all four (4) properties exceeded $5,000.00 to each property. In his Statement of Matters Complained of on Appeal, Defendant alleges that his prosecutions in Schuylkill County should have been barred because of similar charges filed against him in Carbon County; that the evidence does not support

the jury's findings that two (2) of the residences he burglarized were "occupied structures"; and that his statements should have been suppressed.[1]

The evidence produced at trial established that Grouse Hunt Farm was the owner of a single family home located at 474 Fairview Street, Rush Township, Schuylkill County, Pennsylvania, which it was in the process of remodeling. It was served by oil heat, running water, electricity, and was damaged when Defendant and his two (2) co-conspirators, Stephanie Keck and Kerry Frank, broke into the building at night and ripped copper piping, wiring, and a copper coil from throughout the premises. The evidence established that no permission was given to any of the co-conspirators to enter the premises or to remove any items. The furnace in the premises was completely taken apart in order to remove the copper coil, after which the copper was taken to a junk yard and sold. The jury determined that the premises was adapted for overnight accommodation because it was a habitable property. The only remodeling being performed was the installation of new carpeting and painting. The cost of repairing the damage done to the premises was $5,500.00.

---

[1] Defendant's attorney filed a timely direct appeal of his sentence on 12/31/13. On 1/30/14, Defendant filed a pro se petition seeking In Forma Pauperis status, the right to proceed pro se on appeal, and also filed a pro se Statement of Matters Complained of on Appeal, which the Court has addressed in this Opinion. On 1/23/14, the Court extended the time for Defendant's attorney to file an amended Statement of Matters Complained of to 3/24/14 and issued a rule to show cause on the District Attorney and the Public Defender of Schuylkill County as to why the Defendant's request for IFP status and self-representation should not be granted. The rule was returnable on or before 2/20/14. On 3/14/14, the Court conducted a *Grazier* hearing in accordance with *Commonwealth v. Houtz*, 856 A.2d 124 (Pa. Super. 2004), at which hearing Defendant adamantly insisted on his right to self-representation, after which the Court entered an Order granting his request to represent himself on appeal and also granted his counsel's Motion to Withdraw based upon Defendant's insistence on self-representation. At the *Grazier* hearing, Defendant attempted to ask the Court certain procedural questions, after which the Court directed him to the appropriate Rules. It is noted that the time in which to file a new Statement of Matters Complained Of had already been extended to 3/24/14. That date having passed and Defendant having filed no such amended statement, the Court will address his pro se Statement of Matters Complained Of which was filed on 1/14/14.

2

The evidence also established that the Defendant and his co-conspirators broke into 714 Claremont Avenue, Rush Township, Schuylkill County, Pennsylvania, and 716 Claremont Avenue, Rush Township, Schuylkill County, Pennsylvania, and damaged both premises while ripping out and removing copper piping, pumps, an air compressor, and other heating materials. The premises at 714 Claremont Avenue was a single family, two (2) story house which was being remodeled. 90% of the remodeling had been completed. It also had heat, electricity, running water, and bathrooms, and the jury found it was adapted for overnight accommodation even though no one was actually residing there at the time. The premises at 716 Claremont Avenue was used for storage of antique automobiles. Again, copper piping and other material exceeding $2,000.00 in value were removed from both premises, and damage to each of them exceeded $3,000.00. Since there was no evidence that 716 Claremont Avenue was adapted for overnight accommodation, that issue was not submitted to the jury.

The evidence also established that the premises of David Mazaika, Jr., at 268 East Main Street, Rush Township, Schuylkill County, Pennsylvania, was also burglarized by the Defendant and his two (2) co-conspirators. Mr. Mazaika was in the process of constructing his residence, and, although it had heat and electricity, it did not have running water. Therefore, the question of whether it was an occupied structure was not submitted to the jury. Once again, the evidence established that the co-conspirators ripped out copper piping, wiring, and also removed tools from the premises. The damage to the premises amounted to $11,000.00. The value of the tools alone was established at $6,000.00. (See Commonwealth Exhibits 12, 13, 14, and 15.)

3

Stephanie Keck and Kerry Frank both testified against Defendant at trial and established that he was the one who planned the crimes; Stephanie Keck acted mostly as a look-out and helped to sell the stolen copper to Wiener's Junk Yard; and Kerry Frank was the "muscle man" who aided Defendant in removing the copper materials from all of the aforesaid premises, which resulted in substantial damage to all four (4) buildings. Keck and Frank both testified that it was the Defendant who planned the crimes and participated in them. He aided in accomplishing the overt acts, which were the completion of the crimes of Burglary, Theft, Receiving, and Criminal Mischief. The jury was properly instructed as to the criminal records of the witnesses who testified and that such evidence was only to be used to help judge their credibility. The Court also instructed the jury as to the fact that Keck and Frank were "accomplices" and provided the appropriate instructions as to how to evaluate their testimonies.

The evidence also established that the Defendant gave incriminating statements to Lori Lienhard of the Summit Hill Police Department and Sergeant Duane Frederick of the Rush Township Police Department after being advised of his _Miranda_ rights and signing a waiver of those rights. He also gave a written statement which incorporated some of the inculpatory statements he made during his interview with the officers. His demeanor during the interviews was described as "boastful" and that he was proud of his role in the crimes. It was also established that he had advised the others to wear gloves so no fingerprints could be detected. He also advised them not to leave any cigarette butts at the scene so there would be a lack of DNA evidence to link them to the crimes.

4

Defendant testified on his own behalf and repeatedly instructed the jury as to how "intelligent" and "responsible" he was. He denied any involvement in the crimes; admitted that he had had a prior sexual relationship with Stephanie Keck and suggested that she was retaliating against him by testifying against him in that he had broken off the relationship with her. He testified that he had prior convictions for three (3) Retail Thefts and Conspiracy to Commit Burglary. During one part of his testimony, he informed the jury that he felt pressured to testify because of the lies and other untruthful statements made against him at trial by his co-conspirators. The Commonwealth objected to the testimony in that he was not answering questions but rather making an argument to the jury, and the Court sustained the objection and directed that the witness answer questions posed to him by the attorneys and did not allow him to argue the credibility of other witnesses as part of his testimony.

Defendant's counsel had moved to dismiss the conspiracy charges arguing that Defendant had been convicted of conspiracy to burglarize premises in other counties and that the instant burglaries were part of a single episode and, therefore, they should be dismissed, citing 18 Pa. C.S.A. §110. Said section provides as follows:

§110. **When prosecution barred by former prosecution for different offense.**

Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1)     The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution of same offense) and the subsequent prosecution is for:

(i)     any offense of which the defendant could have been convicted on the first prosecution;

5

(ii)     any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and **occurred within the same judicial district** as the former prosecution unless the court ordered a separate trial of the charge of such offense; or

(iii)     the same conduct, unless:

(A)     the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(B)     The second offense was not consummated when the former trial began.

18 Pa. C.S.A. §110(1).

The Court denied his motion because each of the instant burglaries was a separate offense involving different premises and different dates. It is noted that 18 Pa. C.S.A. §110(1)(ii) bans a subsequent prosecution if based on the "same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial **and occurred within the same judicial district**". The Carbon County crimes occurred in a different judicial district than the instant one (Schuylkill County). Moreover, proof of the instant crimes involved acts not required to be proven regarding the other offenses.

The Court also instructed the jury as to the considerations upon which it must rely in determining whether any confession must be voluntary. Neither attorney objected to any part of the Court's charge at any time during the trial.

Burglary (18 Pa. C.S.A. §3502(a)) is defined as follows:

6

A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adopted for overnight accommodations in which at the time of the offense any person is present;

(2) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present;

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present; or

(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.

Criminal Trespass (18 Pa. C.S.A. §3503(a)) is defined as follows

(a) Buildings and occupied structures—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

Occupied structure is defined as:

Any structure, vehicle or place adapted for overnight accommodations of persons, or for carrying on business therein, whether or not a person is actually present. (18 Pa. C.S.A. §3501)

7

The evidence supports the jury's finding that the Defendant had burglarized occupied structures with respect to 714 Claremont Avenue, Rush Township, Pennsylvania, a single family two (2) story home which was being remodeled – 90% of which had been completed and which had heat, electricity, running water, and bathrooms. The evidence supports the jury's finding that it was adapted for overnight accommodation even though no one was residing there at the time. Similarly, the premises at 474 Fairview Street, Rush Township, Pennsylvania, was determined by the jury to be an occupied structure. It was a single family home serviced by oil heat, running water, electricity, and was in the process of being remodeled. It is noted the premises at 716 Claremont Avenue, Rush Township, Pennsylvania, was not an occupied structure in that it was not adapted for overnight accommodations because it was used for storage of antique automobiles nor was the property at 268 East Main Street, Rush Township, Pennsylvania, determined to be an occupied structure because it did not have running water.

Defendant alleges that his sentence for Criminal Mischief should have merged with his sentence for Burglary because Criminal Mischief was the object of the Burglary and, therefore, merged with the Burglary sentence. This is incorrect. The information clearly described Theft as the crimes Defendant intended to commit with respect to each of the burglaries, and the Court ruled that the Theft by Unlawful Taking in each instance merged with the corresponding Burglary charge. See Amended Sentencing Order of December 6, 2013, Counts 13, 6, 20, and 26, all of which were Theft counts which merged with Burglary counts.

8

In his Statement of Matters Complained of on Appeal, Defendant alleges that he was denied his constitutional right to represent himself pro se during the trial. A review of the record reveals that, on August 15, 2013, his court appointed counsel, Attorney Christopher Hobbs, filed a Motion to Withdraw as Counsel for the Defendant based upon Defendant's desire to represent himself pro se. A pretrial hearing was held before the Honorable President Judge William Baldwin on August 16, 2013, at which President Judge Baldwin expressed concern about the Motion, after which Defendant informed him that he was agreeable to Attorney Hobbs' continuing representation of him. President Judge Baldwin did not ignore Defendant's request to represent himself but, rather, addressed it at the pretrial hearing, after which the case was assigned to this member of the Court for trial. During said pretrial proceeding, President Judge Baldwin specifically asked Mr. Postie: "Do you want to represent yourself?", and the Defendant answered, "Currently, no." (See p. 3 of transcript of 8/16/13 pretrial proceeding.) This matter was never raised before this member of the Court either prior to or during the trial. The Defendant was represented by Attorney Hobbs vigorously throughout his trial and sentencing. Defendant's complaint in this regard is disingenuous.

In his pro se Statement of Matters Complained of on Appeal, Defendant also alleges that the Commonwealth failed to provide him with a tape of his confession. This matter was addressed at the suppression hearing during which Officer Lienhard testified that, although there were signs informing individuals that interview sessions would be taped, the tape recording system was not functioning properly. The Court directed that any tape in the possession of the Commonwealth be turned over to the Defendant.

However, it appears from the record that no such tape exists based on the testimony of Officer Lienhard.

IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY--CRIMINAL

COMMONWEALTH OF PENNSYLVANIA      :      NO.   1119 – 2012

          vs.                :

FREDERICK ANDREW POSTIE         :

Jennifer Lehman, Esq., Assistant District Attorney – for the Commonwealth
Christopher Hobbs, Esq., Public Defender – for the Defendant

## OPINION OF COURT

DOMALAKES, J.

The Defendant is charged with fifty-one (51) counts, including Burglary, Criminal Trespass, Theft by Unlawful Taking, Receiving Stolen Property, Criminal Mischief, and Loitering and Prowling at Nighttime, which involved a series of burglaries in Rush Township, Schuylkill County, Pennsylvania. He was also charged with a series of burglaries in Carbon County. Defendant filed an Omnibus Pretrial Motion seeking suppression of evidence found pursuant to a search warrant and also seeking suppression of evidence seized as a result of a consensual search of the premises of Kerry Hoffman and Michael Christman in Nesquehoning, Carbon County, Pennsylvania, and is seeking suppression of verbal and written inculpatory statements given by him to police. Defendant has also raised an issue in a pretrial request that his case be severed from cases involving his Co-Defendants in this case. A hearing on his Motion was held as scheduled on April 1, 2013, at which Kerry Hoffman and Michael Christman, who are occupants of the premises at 68 West Center Street, Nesquehoning, Carbon County, Pennsylvania; Lori Leinhard, a police officer with the



Summit Hill Police Department; Timothy Wuttke, a police officer for the Nesquehoning Police Department; Sergeant Duane Frederick, of the Rush Township Police Department; and the Defendant all testified. The parties requested until May 1, 2013, to file briefs. The Court granted the request. Both requested an extension of time for the briefing schedule, to May 16, 2013, which extension was granted by the Court. Both parties have filed same. The Court has reviewed the relevant record and the foregoing, and the matter is now ripe for disposition.

The first issue raised by Defendant is that all evidence seized from the property located at 626 Fairview Street, Tamaqua, Schuylkill County, Pennsylvania, pursuant to Sgt. Frederick's February 21, 2012, Search Warrant should be suppressed. The Court finds, as relevant credible evidence on this issue, that a Search Warrant was issued pursuant to an Affidavit of Probable Cause on February 21, 2012, and that the search was performed that particular day. The justification for the Search Warrant consisted of statements Defendant himself had given to Sgt. Frederick specifically describing items that had been stolen during the rash of burglaries. Prior to questioning, the Defendant had been given his *Miranda* warnings. The questioning occurred when the Defendant had been subject to a vehicle stop and had attempted to flee. During the conversation with Sgt. Frederick, the Defendant had been bragging about his participation in the burglaries and how he had gotten away with stealing so many items. Officer Frederick testified that this conversation took place prior to February 21, 2012, when he had an opportunity to talk with the Defendant. One of those conversations was at the police department in Rush Township. He said it was maybe a week or two or maybe even a couple of weeks before a subsequent interview with Defendant at the Summit Hill Police

2

Department on February 28, 2012. He had picked Defendant up on a warrant from another county. Defendant told Officer Frederick about burglaries. Officer Frederick did not believe him at first, but then Defendant told Officer Frederick of specific items that were stolen during the burglaries he was investigating. Defendant told Frederick that he was involved with burglaries and fencing items, and it would go through one, two, three, four, or five people, so the items could not be traced. He was in custody at the time based on a retail theft warrant from Northumberland County. He was given his *Miranda* rights prior to the police officer talking to him. Commonwealth's Exhibit #4 in the record is the application for the search warrant of Defendant's residence at 626 Fairview Street, Tamaqua, Pennsylvania. In the Affidavit of Probable Cause supporting that application, Officer Frederick affirmed that, on February 20th, he had spoken with Defendant at the Rush Township Police Station. Defendant voluntarily gave Officer Frederick information of which the public was unaware in reference to burglaries committed in Rush Township. Defendant told Officer Frederick that he knew where stolen items were from the burglaries. This is exactly what Officer Frederick had testified to at the time of the hearing. The Affidavit of Probable Cause further contains information that Frederick went to a 36 E. Ludrow Street, Apartment 2, Summit Hill, Pennsylvania, where he spoke with one Kerry L. Frank. Frank did allow the officer to search that residence. Frederick found a PP&L power meter in the basement where Defendant stated it would be. Kerry Frank told Officer Frederick that Defendant did bring the power meter to his apartment. Kerry Frank did further tell the officer that Frank saw other stolen items from a burglary in Rush Township in his basement that were brought and removed by the Defendant. The Affidavit of Probable Cause also

3

contains information that Officer Frederick went to 68 West Center Street, Nesquehoning, where he spoke to Michael Christman who told Officer Frederick that Defendant had brought him a hot water heater and then dropped off copper pipes at a later time. Officer Frederick had discovered, during the course of his investigation, that the water heater was stolen from a burglary in Rush Township, and there were several different sizes of copper pipes seized from his residence. Officer Frederick affirmed that, in the evening hours of February 20, 2012, he and another officer tried to make contact with Annette Postie by knocking at the front door. They knocked to no avail. Then they knocked at the back door where they saw, in plain view, copper pipes that were laying in the grass. At this point, they left the residence.

In reviewing the validity of an affidavit to determine if there was probable cause in support of a search warrant, the viewing court does not look at each individual circumstance but rather looks to the circumstances as a whole. Under that standard, a magistrate is to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of the knowledge of the person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Commonwealth v. Hawkins*, 45 A.3d 1123, appeal denied 53 A.3d 756 (Pa. Super. 2012). An affidavit stating that police had been personally informed by a participant in the criminal act, as to involvement of the defendant and location or storage place of fruits of illegal conduct and specifically describing the premises to be searched supply probable cause for issuance of the search warrant. *Commonwealth v. Yohn*, 414 A.2d 883 (Pa. Super. 1979). The Court concludes that the Affidavit of Probable Cause is adequate to support

4

issuance of the search warrant. The information that had been received was from the Defendant himself giving information about the burglaries of which the public was unaware. The Defendant told Officer Frederick that one of the stolen items from the burglaries would be a PP&L power meter, and, when Officer Frederick went to the home in question, that of Kerry Frank, such an item was there. Frank, who was not an informant in this case, but who is an independent witness, also told Officer Frederick that Frank saw other stolen items from a burglary in Rush Township in his basement that were brought and removed by the Defendant. The Affidavit also contains the information from Michael Christman, who is an independent source and not an informant, that Defendant is the one who brought him a hot water heater that had been stolen, and dropped off copper pipes which had been stolen. The officer also personally observed copper pipes at the residence of Defendant. This is sufficient, under the applicable standards, to establish probable cause. However, the Search Warrant in this particular case is attacked on another basis – that being a technical one – that the items to be searched for and seized were not specifically identified in the Search Warrant. Defendant is correct on this issue. The application for the warrant simply stated that they were searching for "stolen items from several burglaries in Rush Township". The Commonwealth in its Brief has agreed that the items were not identified specifically. Pa. R.Crim.Proc. 215 does require that the applicant specifically identify the property to be searched and seized, and appellate court decisions have consistently held that a warrant can be held to be unlawful if this requirement is not met. See *Illinois v. Gates*, 467 U.S. 213 (1983); *Roe v. Ramirez*, 540 U.S. 51, 124 Supreme Ct. 1284, 157 L.Ed. 2d 1068.

5

The next issue raised by Defendant is that all statements, both verbal and written, given to the members of the Rush Township Police Department, Nesquehoning Police Department, and Summit Hill Police Department on or about February 28, 2012, should be suppressed. On this issue, the Court finds the following information as immediately hereinafter set forth as credible.

On February 28, 2012, Officer Leinhard and Sgt. Frederick drove to the Northumberland County Prison to interview Defendant about a series of burglaries. They had information on these burglaries from the Defendant, from a co-conspirator, and from independent sources – that is people who had received stolen items from Defendant. When the police officers arrived at the Northumberland County Prison, they were told that the Defendant was attending another hearing. They waited for his return to the prison. During their wait, they were informed that a Carbon County bench warrant had been issued for Defendant's apprehension, and they had been requested by Carbon County officials to transport him to the Carbon County jail. When he was returned from the hearing, Defendant was informed of the bench warrant, handcuffed, and placed into the rear of the police cruiser. He was not questioned about the burglaries at this time, though he began to offer statements about them. Officer Leinhard had testified that she advised him about the bench warrant in Carbon County and advised him that she wanted to speak to him in reference to burglaries that occurred in Carbon County and Schuylkill County (Hrg. Transcript 4/1/13, p. 20). The Defendant told her that he'd answer any questions she wanted, and he'd be honest. In the police car, he started to talk about things, and she told him she didn't conduct interviews in police cars and that they'd wait until they got back to the station.

6

Defendant was then transported to the Summit Hill Police Department interview room which is located in Carbon County – approximately one hour and forty (40) minutes from the Northumberland County Prison. Before being questioned, he was provided with the *Miranda* warnings. He was interviewed about the series of burglaries and related crimes by Officer Leinhard and Sergeant Frederick. He was not threatened nor coerced in any manner. During the interview, he was brought pizza and soda, which he consumed, and was permitted to repair his glasses. Defendant waived his *Miranda* rights and executed a written waiver of same. (See Commonwealth's Exhibit #1.) During the interview, he admitted to participating in the burglaries in Summit Hill and Nesquehoning, Pennsylvania, both of which are in Carbon County, and burglaries in Rush Township, Schuylkill County. The interview took approximately four (4) hours. At some point during the interview, the Defendant was left alone in the interview room and wrote a written statement in his own handwriting. Although he testified that he made "vague" references to a lawyer during the interview, the Court finds the testimony of the officers credible and does not credit the testimony of the Defendant. The officers testified that he never requested counsel nor indicated that he wanted the interview to stop. After the interview, Defendant was transported to the Carbon County Prison on the bench warrant. It is noted that Defendant's written statement is in his own handwriting, and he admitted signing it.

The testimony also established that there were signs posted in and about the interview room informing individuals that the interview would be taped. Officer Leinhard testified that there have been technical problems with the taping system. The Court directs that a copy of the tape be provided to Defendant's counsel, if the tape exists.

7

Defendant argues on this issue that all statements, both verbal and written, on February 28, 2012, were obtained without probable cause and as a result of the Defendant's illegal detention. Furthermore, such statements were obtained as a direct result of the police wanting to question the Defendant based on the results of the illegal search of Defendant's residence, thus are tainted and must be excluded. The Defendant also argues that he only gave the statement to the police officers on February 28, 2012, because they told him they had found evidence at his residence as a result of the search of February 21. The Defendant argues, therefore, that, since that search was unlawful, his statement was the "fruit of the poisonous tree". The Defendant also argues that he was made a promise of leniency by the police in return for giving his statement. The Court finds that the verbal and written statements were not obtained without probable cause because of any illegal detention. Before the police officers went to Northumberland County Prison to retrieve the Defendant and to talk to him about the burglaries in Nesquehoning, Rush Township, and Summit Hill, they had credible information that he was involved in these burglaries from what they referred to as "knock and talk" investigations as to the burglaries where they would go to different homes, knock on the door, and then talk to the people about stolen items. This was done in the case of Christman and Kerry Hoffman at 68 West Centre Street in Nesquehoning, Carbon County, on February 20 or 21st where a stolen water meter was uncovered, and the owners and one of the residents, Mike Christman, told them that Defendant is the one who brought the stolen water meter to that residence. The information gathered from this home was with the consent of both Christman and Hoffman, and Defendant has no standing to attack that search as will be hereinafter

8

discussed. It was not an illegal search. The police officers testified that they had gone to the residence of a Stephanie Keck and received a consent search for this residence. This was located at 36 East Ludlow Street. Officer Frederick of Rush Township was with Leinhard when the search was conducted. Officer Frederick had indicated to Leinhard that some of the items found at the Keck and Kerry residence were items missing from a Rush Township home burglary. Officer Frederick, of course, prior to going to Northumberland County, also had the information that, from the February 20, 2012, contact with Defendant, that Defendant had information concerning the burglaries committed in Rush Township which was confirmed to be accurate. Officer Frederick had been told by Kerry Frank that Defendant brought a stolen power meter from a burglary to the address at 36 East Ludlow, and that is what Defendant himself had told the officer. Christman also said that Defendant brought him copper pipes to his residence at 68 West Center Street, which pipes had been stolen from burglaries. There certainly was sufficient information supplied to the police that they had reasons, independent of any search at his home, to talk to him about these burglaries.

The statements therefore were not obtained as a direct result of the police wanting to question the Defendant **based on the results of an illegal search of the Defendant's residence** (emphasis added). The statements were obtained because the police wanted to question the Defendant **based on information independent of any illegal search of the Defendant's residence that he was involved in these burglaries**. Officer Leinhard specifically testified (see pp. 29 and 30 hearing transcript) that she did not go to the Northumberland County Prison to talk to Defendant based on information received pursuant to the search of the Defendant's residence but on

9

independent evidence that she had from Sgt. Frederick and from her own investigation that he was involved in these burglaries. She testified Officer Frederick gave her information about Defendant's involvement, but it was not solely based on this information that she went to the Northumberland Prison to talk to him. She had not received information from Officer Frederick that there were stolen items seized from Defendant's residence. This was not the reason they were going to talk to him. She had information that stolen items were in Summit Hill. She went to that residence, conducted a consent search and found stolen items from thefts in Schuylkill and Carbon Counties. This was at the Stephanie Keck and Kerry Frank residences.

*Miranda* warnings are required to be given by the police in the situation where there is custodial interrogation. *Commonwealth v. Gwinn*, 723 A.2d 143; *Commonwealth v. Bess*, 789 A.2d 757. In this case, the record supports a finding that there was custodial interrogation. However, the *Miranda* rights accorded to a person can be waived by the defendant. "It is the Commonwealth's burden to establish whether the defendant knowingly and voluntarily waived his *Miranda* rights. In order to do so, the Commonwealth must demonstrate the proper warnings were given and that the accused manifested an understanding of these warnings." *Commonwealth v. Eichinger*, 915 A.2d 1122 (2007), cited in *Commonwealth v. Biez*, 21 A.3d 1280 (Pa. Super. 2011). In *Biez* supra., our Superior Court reviewed the case of *Commonwealth v. Bomar*, 826 A.2d 831 (2003). In that case, before interrogating the defendant, the police read the defendant the *Miranda* warnings. While the officer was administering the warnings, the defendant interrupted him and told the officer that he understood his rights. The officer explained that, he nevertheless, had to advise him of his rights. The

10

officer proceeded to recite the warnings in their entirety from the start, and he did so. He asked the defendant if he understood his rights. The defendant responded he understood his rights, after which the officer then began to question the defendant. The defendant never declined to speak with the officer nor did he request an attorney. The *Bomar* court found that the defendant had manifested a desire to waive his *Miranda* rights. The *Biez* court, following *Bomar*, held that, after a defendant is given his *Miranda* rights, a statement by the defendant that he understands those rights followed by the answering of questions posed by the police constitute a sufficient manifestation of defendant's intent to waive those rights as to satisfy state constitutional protection. The *Biez* court also concluded this was so even though the defendant did not execute a written waiver. In this case, the Court has found that the Defendant voluntarily executed an acknowledgement that he had been given his *Miranda* rights and was waiving those rights. On the question of the voluntariness of his statements, the burden is on the Commonwealth to demonstrate that the will of the accused was not overborne – either through physical or mental pressure in obtaining a confession and that it issued from free choice. *Commonwealth v. Jones*, 322 A.2d 119 (Pa. 1974). Evidence showing, inter alia, that a defendant was advised of his constitutional rights and that he stated that he understood those rights and was willing to answer questions of his own free will establish that the statements so made to the police were voluntary and, thus, admissible. *U.S. v. Glover*, 394 F.Supp. 253, affirmed *U.S. v. Choice*, 523 F.2d 1051. A confession will not be ruled involuntary where a suppression court's decision to credit testimony of the officer whose version of the circumstances directly contradicted the

11

version of the defendant was supported by the record. _Commonwealth v. Subler_, 436 A.2d 1376 (Pa. 1981).

On this issue of his voluntariness of verbal and written statements, the Defendant argues that he only gave the statements because he was confronted with the illegally seized evidence from his residence. In questioning the Defendant, Officer Leinhard did not mention to him anything about the search of his own home. She did confront him with evidence from independent sources of his involvement in burglaries and thefts she had investigated, and, after that, he admitted his involvement in those. Officer Frederick did state that, on one occasion during the questioning of Defendant, he mentioned that stolen items had been recovered from Defendant's home. The relevant Pennsylvania appellate court decisions on whether an illegal intrusion on the rights of a person taints a subsequent confession by that person have laid out four (4) factors to be considered by the courts in reviewing this issue. The cases deal mostly with illegal arrests, but the principals enunciated are the same. Whether confessions or admissions secured from an illegally arrested person are admissible depends on the facts in each case, considering the following factors: (1) whether _Miranda_ warnings were given; (2) the temporal proximity of the arrest and confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. _Commonwealth v. Smith_, 995 A.2d 1143, 606 Pa. 127, certiorari denied, _Smith v. Pennsylvania_, 131 S.Ct. 518, 178 L.Ed. 2d 382. In the case at bar, the Court finds that _Miranda_ warnings were given. The illegal search was a week before the statement was given by the Defendant. The intervening circumstances were the Defendant's own actions and words. He wanted to talk about the burglaries in the automobile on the way

12

to being interviewed and told police he would tell them the truth. They declined to interview him in the car. He was confronted in questioning by Leinhard, not with evidence seized from his own home, but with evidence from other burglaries. After he was told this by Officer Leinhard, he confessed to those burglaries. When he was told that items were taken from his own home that were stolen, his attitude was not of a sort as if to say "Oh, my God, I am caught now", but, rather, wasn't "I clever in planning and executing these thefts." Additionally, the Defendant expressed an interest in securing a deal of some kind in the form of concurrent sentences. Finally, the search of the Defendant's home was not one that was illegal because the Search Warrant lacked probable cause in the Affidavit for it but, rather, that it was not sufficiently specific in identifying items it sought. The "misconduct" of the police was failing to be specific. They were not attempting to circumvent the probable cause requirements needed to secure a search warrant. In fact, they complied with those requirements. This Court finds that their purpose was not nefarious in any way nor was their conduct in any manner to be described as flagrant. In the case of _Commonwealth v. Wright_, 332 A.2d 809 (Pa. 1975), it was held that statements following an illegal arrest must be excluded from evidence only if they are causally related to an invasion of a suspect's rights, and, if the statement is sufficiently an act of free will to purge the primary taint of unlawful invasion or if the connection between the arrest and the statement is so attenuated as to dissipate the taint, the statement need not be excluded. This Court finds, based on credible evidence in the record, that the Defendant's statement to the police at the Summit Hill Police Station was sufficiently an act of his own free will, and the connection

13

between the statement and any illegal search of his home was so attenuated as to dissipate any taint from that search.

On this issue, the Defendant also argues that he was made a promise in return for his confession in this case concerning his sentence. The Court finds that he was made no such promise. What Officer Leinhard had indicated to him was that, if he was offered concurrent sentences by the prosecutor from the District Attorney's Office, she would not oppose that. That is not an offer of leniency coming from her. A promise that, if he were given a concurrent sentence, the officer would not have any problem with that is not a promise of leniency. Again, the Court finds that Defendant's confession was not induced by any promise. In the case of *Commonwealth v. Templin*, 795 A.2d 959 (Pa. 2002), a defendant's obligation that, before he confessed to sexual contact with a child, the officer had promised to recommend a release on recognizance bail at arraignment, did not automatically invalidate defendant's confession as being involuntary—rather involuntariness would be determined from the totality of the circumstances.

The third issue raised by the Defendant is that all evidence seized from the home of Michael Christman and Kerry Hoffman on or about February 21, 2012, should be suppressed. On this issue, the Court finds that the credible evidence produced at the hearing on April 1, 2013, established that, on February 20, 2012, Michael Christman was the owner/occupier of the Nesquehoning residence where he resided with his girlfriend, Kerry Hoffman, their child, and another child of Ms. Hoffman. On that date, officers asked for permission to search the premises because they were looking for stolen items. Christman and Hoffman gave permission to search the home. A stolen

14

hot water heater was discovered in the basement. Neither Ms. Hoffman nor Mr. Christman were threatened or coerced in any way into granting consent to search their home. There was no evidence that Defendant had any interest in the property. Therefore, he has no standing to object to the owner/occupier's consent to search. *Commonwealth v. Maldanado*, 14 A.3d 910 (Pa. Super. 2012); *Commonwealth v. Peterkin*, 513 A.2d 373 (Pa. 1986). An individual who lacks a reasonable expectation of privacy in the place searched is foreclosed from invoking the protection on the Fourth Amendment. *U.S. v. Scott*, 673 F.Supp. 331 (Middle Dist. 2009). Before a defendant can challenge the seizure of physical evidence, he must demonstrate that he had both the possessory interest in the evidence and a legally cognizable expectation of privacy in the area where the evidence was seized. *Commonwealth v. Bird*, 987 A.2d 786 (Pa. Super. 2009).

The next issue raised by Defendant is that all evidence seized from his cell phone, including the phone itself, pursuant to Patrolman Wuttke's February 27, 2012, search warrant should be suppressed. Officer Wuttke included the following information in the affidavit of probable cause for the search warrant concerning Defendant's cell phone. He noted that, in November and December of 2011, complaints of copper theft were coming into the police departments of Carbon and Schuylkill County. On November 25, Officer Blizzard of Nesquehoning handled the investigation of a burglary of a vacant home at 134 Stock Street, Nesquehoning Borough. Blizzard had found that the front door was kicked in, the PP&L meter wires were cut, and the alarm system was smashed. During this burglary, copper piping and wiring from the downstairs basement portion of the home were removed. On December 3, Officer Wuttke himself handled

15

another burglary in the same home and found copper piping was removed from the home. On February 20, Sergeant Frederick of the Rush Township Police Department told Officer Wuttke that he had taken Defendant into custody on a warrant, and Defendant had given him information on burglaries in the area, including the Nesquehoning burglaries. On February 23, Officer Frederick of Rush Township told Officer Wuttke that he had interviewed Stephanie Keck at the Schuylkill County Prison, who was intimately involved with Defendant who was a suspect in the copper wire thefts. Keck had information on the burglaries that occurred in Nesquehoning. Wuttke went personally to the Schuylkill County Prison and spoke with Keck. Keck told Officer Wuttke that Defendant committed the burglaries in Nesquehoning and gave detailed information on them, including the smashed alarm system, the PP&L meter being cut, the copper piping being taken, as well as other items, and the fact that he had to go back on another day to remove the rest of the piping, as Defendant did not have enough room to take everything in one trip. Keck also advised that she is the one that turned the copper from the Nesquehoning burglaries into the scrap yard. She further stated that Defendant wrote her a letter in prison, and, in one letter, he said "I wish we were using this nice weather to add more homes to my list." She explained that Defendant keeps a list of homes he "hit" on his phone. She advised that Defendant took pictures on his cell phone of the inside of the home at 134 Stock Street, and she received text messages from Defendant about the home while he was inside of it. He has an Apple iphone. Defendant was going to go back into the home at 134 Stock Street, but found the police at the home and took pictures of the patrol cars in the driveway with his cell phone. On February 24, Wuttke spoke to Frederick and asked if Defendant had a cell

16

phone on his person. Frederick said that he did when he was arrested and identified it to be an Apple iphone, but it was in the custody of the Coal Township Police Department. So, from this Affidavit, we can deduce that Wuttke knew from a police officer that there had been a burglary at Stock Street; that PP&L metal wires were cut; and copper piping and wiring from the downstairs basement portion of the home was removed. When Wuttke talked to Keck in the prison, she gave him information that she had received from Defendant that there was a smashed alarm system; that the PP&L meter was cut; and that copper piping was taken. All of this was confirmed by the independent information from Officer Blizzard. It has been held that for purposes of establishing an informant's veracity, more than corroboration of a few minor elements of the story is necessary, but police need not corroborate every detail of an informant's report to establish sufficient evidence of veracity. *U.S. v. Bush*, 647 F.2d 357 (Ct. of Appeals of 3rd Circ. Pa. 1981). In that case, it was held that an informant's legitimate basis of knowledge means in general that the informant either directly observed critical facts or that he obtained those facts directly from one of the participants in the criminal enterprise who, by revealing those facts, made admissions against penal interests. *U.S. v. Bush*, 647 F.2d 357. An accomplice's statements which were used as the basis for the affidavit for a search warrant, pursuant to which blood, hair, and spittle samples were taken from the defendant, constitute declarations against the accomplice's penal interest and were sufficient to ensure its reliability. *Commonwealth v. Chumley*, 394 A.2d 497, certiorari denied *Chumley v. Pennsylvania*, 99 Supreme Ct. 1515 (Pa. 1978). In this case, Stephanie Keck admitted that she took stolen copper secured by

17

Defendant from the Nesquehoning burglaries to a scrap yard. That is definitely a statement against her penal interests.

The last issue raised by the Defendant, Defendant, is that the instant matter be severed from the cases involving the Defendant's Co-Defendants. The Court does find that the Defendant may be prejudiced by the trying of his case with that of his Co-Defendants. The Defendant's Co-Defendants implicate him in the crimes charged against them. Any statements they gave to the police, if admitted against them, would also implicate him. Pursuant to the case of *Commonwealth v. Bruton*, 391 U.S. 123, 8 S.Ct. 1620, 20 L.Ed 2d 476 (1968), a joint trial of all the defendants under the foregoing circumstances would be generally prohibited. A redaction of the statements is, at times, permitted, but, in this case, a joint trial, especially one before a jury, could be highly prejudicial, for it would be very difficult, if not impossible, for the fact finders to only consider the statements of co-defendants given to police against that co-defendant when they also implicated the defendant.

18